UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br><br>STEVEN KEITH ZINNEL,<br><br>Debtor. | No.  2:12-cv-01541-TLN<br>Bankruptcy No. 05-28800-C-7<br><br><br>**ORDER** |

Appellant Steven Zinnel ("Zinnel") brings this appeal of the Bankruptcy Court's orders on: (1) application for interim compensation regarding Trustee Susan K Smith's first interim application for allowance of compensation and reimbursement of expenses to counsel for the current Chapter 7 Trustee; and (2) application for interim compensation regarding Trustee Susan K Smith's first interim application for allowance of compensation and reimbursement of expenses to accountants for the current Chapter 7 Trustee.  (BK ECF 1.)  Plaintiffs in the bankruptcy case are Creditors First Bank and Safeco Insurance, and Trustees Stephen M. Reynolds, Susan K. Smith and August B. Landis (collectively, "Plaintiffs").

In light of the ongoing parallel criminal proceedings against Zinnel, and on the Court's own motion, this Court stays the current bankruptcy appeal, pending the resolution of the criminal charges.

///

1

**BACKGROUND**

**A. The Criminal Proceeding[1]**

On June 8, 2011, the government filed an indictment against Zinnel and Derian Eidson ("Eidson"). (2:11–cr–00234–TLN ECF 1.)  A magistrate judge issued an arrest warrant later that day.  (ECF 6.)  On June 9, 2011, Deputy United States Marshals arrested Zinnel. (Id.)

The indictment charges fourteen counts and a forfeiture allegation against Zinnel.  (Id.)   These counts include two counts under 18 U.S.C. § 152 for bankruptcy fraud, two counts under 18 U.S.C. § 1956(h) for money laundering conspiracy, ten counts under 18 U.S.C. § 1956 for money laundering, and two counts under 18 U.S.C. § 1957 for transactions in criminally derived property.  (Id.)

With respect to the first count of bankruptcy fraud, the government alleges that Zinnel knowingly and fraudulently transferred and concealed property in contemplation of his bankruptcy.  (Id. at 3.)  With respect to the second count of bankruptcy fraud, the government alleges that Zinnel knowingly and fraudulently concealed certain interests from an officer of the court and from creditors.  These interests include payments Zinnel received from Company 1 through Done Deal, his interest in Done Deal's bank account, his interest in 4Results, his interest in Auto and Boat Store, and his interest in the Luyung Property.  (Id. at 6.)

In the money laundering conspiracy counts, the government alleges that Zinnel and Eidson knowingly conspired with each other and with at least one other person to commit offenses in violation of 18 U.S.C. §§ 1956 and 1957 by disguising payments to Zinnel as payments to Done Deal from Company 1 for purported sales of goods and services. (Id. at 8; 14.)

The multiple money laundering counts consist of allegations that Zinnel and Eidson conducted and attempted to conduct financial transactions affecting interstate commerce; specifically, the negotiation of a check from Company 1 to Done Deal, which involved proceeds from violations of 18 U.S.C. § 152.  (Id. at 11.)

---

[1]The factual background of the criminal proceeding is taken from the indictment background.  (2-11-cr-00234-TLN ECF 1.)

1    The count charging transactions in criminally derived property alleges that Zinnel engaged

2 in an illegal monetary transaction affecting interstate commerce when Zinnel made a transfer of

3 approximately $172,000 in U.S. funds from Washington Mutual Bank to E–Trade, as these funds

4 were derived through money laundering.  (Id. at 13.)

5    The forfeiture allegation seeks recovery of all real and personal property that constitutes,

6 or is derived from, the proceeds traceable to the aforementioned counts.  Such property would

7 allegedly include property and proceeds otherwise subject to the bankruptcy proceeding,

8 including the Luyung Property.  (Id. at 19.)

9 **B. The Bankruptcy Proceedings**

10    On or about July 20, 2005, Zinnel filed a voluntary bankruptcy petition in his name, case

11 number 05–28800–C-7, under Chapter 7 of Title 11 of the United States Code, in the United

12 States Bankruptcy Court for the Eastern District of California.  (2:12–cv–00249–TLN, ECF 1.)

13 On the schedule of assets and liabilities filed in his bankruptcy case, Zinnel disclosed

14 $842,620.00 in assets, excluding any interests in assets transferred as alleged above,

15 $2,013,896.29 in secured debt and $4,036,466.25 in unsecured debt.

16    On appeal to this court are two orders of the Bankruptcy Court: one granting an interim

17 compensation for attorneys' fees in the amount of $80,000 (BK ECF 513), and one granting an

18 interim compensation of accountancy fees in the amount of $3,000.

19                         **STANDARD**

20    While a district court may stay civil proceedings pending the outcome of parallel criminal

21 proceedings, such action is not required by the Constitution.  Federal Sav. & Loan Ins. Corp. v.

22 Molinaro, 889 F.2d 899, 902 (9th Cir.1989); Sec. & Exch. Comm'n v. Dresser Indus., 628 F.2d

23 1368, 1375 (D.C. Cir.), cert. denied, 449 U.S. 993 289 (1980); see generally United States v.

24 Kordel, 397 U.S. 1, 90 (1970).  The Ninth Circuit has held that "in the absence of substantial

25 prejudice to the rights of the parties involved, simultaneous parallel civil and criminal

26 proceedings are unobjectionable under our jurisprudence."  Keating v. Office of Thrift

27 Supervision, 45 F.3d 322, 324–25 (9th Cir.1995) (quoting Dresser, 628 F.2d at 1374).

28 Nevertheless, a court may decide in its discretion to stay civil proceedings "when the interests of

3

1    justice seem to require such action." Id. (quoting Kordel, 397 U.S. at 12 n. 27).

2           When deciding whether to stay civil proceedings, courts should consider "the particular

3    circumstances and competing interests involved in the case[s]." Id. (quoting Molinaro, 889 F.2d

4    at 902). The Ninth Circuit has instructed the court to consider "the extent to which the

5    defendant's Fifth Amendment rights are implicated." Id. (internal quotation omitted).

6           In determining whether to stay a parallel civil proceeding, courts should consider the

7    following factors:

8

9           (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or
            any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2)
            the burden which any particular aspect of the proceedings may impose on
10          defendants; (3) the convenience of the court in the management of its cases, and
            the efficient use of judicial resources; (4) the interests of persons not parties to the
11          civil litigation; and (5) the interest of the public in the pending civil and criminal
            litigation.
12

13   Id. at 325 (citing Molinaro, 889 F.2d at 903).

14          The Ninth Circuit has cautioned, however, that "[a] defendant has no absolute right not to

15   be forced to choose between testifying in a civil matter and asserting his Fifth Amendment

16   privilege." Id. at 326. Not only is it permissible to conduct a civil proceeding at the same time

17   as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment

18   privilege, but it is even permissible for the trier of fact to draw adverse inferences from the

19   invocation of the Fifth Amendment in a civil proceeding." Id. Despite the generosity of the

20   standard, it is nonetheless true that permitting simultaneous proceedings may seriously undermine

21   the ability of a person presumed innocent to defend himself and may provide the prosecution with

22   an undue advantage because it will have access to the evidence tendered in the bankruptcy

23   proceedings.   In re SK Foods, L.P., 2010 WL 5136189 (E.D.Cal. Dec.10, 2010) order clarified

24   by 2011 WL 1442332 (E.D.Cal. Apr.14, 2011).

25   ///

26   ///

27   ///

28   ///

4

**ANALYSIS**

**A. Relationship Between Adversary Proceedings and Criminal Indictment**

The strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter.  <u>Dresser</u>, 628 F .2d at 1375–76.  Specifically, "[t]he noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case."  <u>Id.</u> at 1376.  In <u>Dresser</u>, the D.C. Circuit considered whether a corporation was entitled to special protection against an SEC subpoena because of a parallel grand jury investigation of the same issue.  The D.C. Circuit reasoned that, "[t]he case at bar is a far weaker one for staying the administrative investigation [because no indictment has been filed, and thus,] no Fifth Amendment privilege is threatened." <u>Id.</u>  The Ninth Circuit adopted this reasoning in <u>Molinaro</u>, where it held that the district court did not abuse its discretion by deciding that the burden on the defendant's Fifth Amendment privilege was negligible because no related criminal indictments were pending against him at the time of its ruling. <u>Molinaro</u>, 889 F.2d at 903.

Here, Zinnel faces criminal charges of bankruptcy fraud, money laundering, money laundering conspiracy, and transactions in criminally derived property.  (Indictment, 2:11–cr–00234–TLN–1, ECF 1.)  These charges are closely related to the issues involved in Zinnel's bankruptcy appeal.  Specifically, the issues involved in Zinnel's bankruptcy appeal include: (1) whether the Bankruptcy Court awarded reasonable compensation for services rendered and reimbursement for actual and necessary expenses; (2) whether the Bankruptcy Court took into account the time spent on such services, the rates charged, and whether the services were necessary; and (3) whether the Bankruptcy Court allowed compensation for unnecessary duplication of services and services that were not reasonably likely to benefit the debtors estate and necessary to the administration of the case.

///

1    The assets sought in the criminal forfeiture proceedings overlap to a significant degree

2    with the assets sought in the adversary proceedings.  Specifically, the government seeks forfeiture

3    of a sum of money equal to the total amount of money involved in the scheme, and vacant land

4    known as "The Luyung Property" located in Rancho Cordova, California. (Indictment, 2:11–cr–

5    00234–TLN–1, ECF 1, at 19.)  Moreover, Zinnel's Fifth Amendment rights will be implicated any

6    time he testifies in the civil case or responds to discovery requests, as his responses will be

7    admissible to prove that he engaged in the conduct alleged in the indictment.  SK Foods, 2010

8    WL 513618, at *7.  The relevant conduct can exceed the specific allegations of the indictment.

9    Specifically, under Federal Rule of Evidence 404(b), evidence of crimes, wrongs, and acts not

10   alleged in the indictment, may be used to prove "motive, opportunity, intent, preparation, plan,

11   knowledge, identity, or absence of mistake or accident."  Id.  Under this rule, for example,

12   evidence that Zinnel fraudulently transferred assets might be used to prove that Zinnel intended to

13   commit the fraudulent acts alleged in the indictment, or had a plan to conceal fraudulently

14   obtained assets. This evidence would clearly jeopardize Zinnel's Fifth Amendment rights.

15   Thus, although the specific allegations of the indictment and the adversary proceedings

16   may differ to some degree, the bankruptcy litigation seriously implicates Zinnel's Fifth

17   Amendment rights.  Zinnel has been criminally accused of engaging in an enterprise through

18   which he allegedly obtained assets illegally. The Trustee now seeks to recover these assets and to

19   prevent Zinnel from fraudulently transferring them.  Therefore, the implication of Zinnel's Fifth

20   Amendment rights weighs strongly in favor of staying Zinnel's bankruptcy appeal, pending the

21   resolution of the related criminal charges against him.

22   **B. Other Factors Relevant to Court's Decision to Stay**

23   **1. Plaintiffs' Interest in Proceeding**

24   In addition to the extent that a defendant's Fifth Amendment rights are implicated, courts

25   must also consider "the interest of the [Plaintiff] in proceeding expeditiously with this litigation

26   or any particular aspect of it, and the potential prejudice to [Plaintiff] of a delay."

27   Keating, 45 F.3d at 325 (citation and quotation marks omitted).  Plaintiffs certainly have an

28   interest in proceeding expeditiously to trial.  The Court finds that Plaintiffs have an interest in

6

1  seeing this case proceed as scheduled.  Plaintiffs commenced this action in July of 2005 and have

2  waited almost eight years for it to finish.  However, Zinnel was not indicted until June 2011.

3  The amount of time that has transpired since the initial bankruptcy filing balanced with the much

4  more recent indictment weighs slightly in Plaintiffs' favor, as the Plaintiffs have an interest in

5  seeing this case proceed as scheduled and any further delay may result in prejudice to the

6  Plaintiffs.  Cf. Estate of Hernandez–Rojas v. Customs & Border Patrol Agent 7663, 2012 WL

7  5429091 (S.D.Cal. Nov.7, 2012) (finding that this factor weighed heavily in plaintiffs' favor when

8  the defendants had not been indicted).

9         **2. Burden on Defendants**

10         The next factor courts consider is "the burden which any particular aspect of the

11  proceedings may impose on defendants."  Keating, 45 F.3d at 325 (citation and quotation marks

12  omitted).  As discussed above, the instant civil proceeding implicates Zinnel's Fifth Amendment

13  rights to a significant degree.  Allowing the civil case to proceed in parallel with the criminal

14  prosecution would effectively force Zinnel to choose between defending himself in the civil case

15  and preserving his Fifth Amendment rights.  S.E.C. v. Alexander, 2010 WL 5388000 (N.D.Cal.

16  Dec. 22, 2010).  Even if Zinnel elects to invoke his Fifth Amendment privilege in the civil

17  proceeding, discovery as to non-party witnesses would prejudice Zinnel in at least two ways.

18  First, in using discovery to mount his defense in the civil case, Zinnel may be forced to expose

19  the basis of his defense to the criminal bankruptcy fraud charges.  Id.  Second, permitting

20  Plaintiffs to engage in broad civil discovery would unfairly expand the scope of criminal

21  discovery beyond the limits of Federal Rule of Criminal Procedure 16(b).  Id .  These are both

22  well-recognized consequences of parallel criminal and civil proceedings that may support a stay

23  or deferral of discovery in cases where delay would not seriously injure the public interest or

24  otherwise cause prejudice.  See Dresser, 628 F.2d at 1376.  The Court therefore finds that

25  permitting the bankruptcy appeal to proceed could seriously burden Zinnel as a defendant and

26  prejudice his criminal defense.  This factor weighs strongly in favor of a stay.

27  ///

28  ///

7

### 3. Convenience and Efficiency

The third factor courts consider is "the convenience of the court in the management of its case, and the efficient use of judicial resources." Keating, 45 F.3d at 325. For example, the Ninth Circuit has held that a district court has an interest in clearing its docket and that this factor weighs in favor of denying a motion to stay. Molinaro, 899 F.2d at 903. On the other hand, "a number of courts have concluded that staying a parallel civil proceeding in its early stages may prove more efficient in the long-run." Alexander, 2010 WL 5388000 at *5. Indeed, "[a]llowing the criminal action to proceed first may narrow the issues and streamline discovery in the civil proceeding." Douglas v. United States, 2006 WL 2038375 at *5 (N.D.Cal. July 17, 2006). Additionally, collateral estoppel based on findings in the criminal case may expedite resolution of the civil case. S.E.C. v. Nicholas, 569 F.Supp.2d 1065, 1070 (C.D.Cal.2008). A stay will also allow civil discovery to "proceed unobstructed by concerns regarding self-incrimination." Jones v. Conte, No., 2005 WL 1287017 at *2 (N.D.Cal. Apr.19, 2005)

Thus, in this case, the overlapping issues and common assets sought to be recovered by the parties weighs in favor of a stay, as allowing Zinnel's criminal case to proceed would likely narrow the civil issues and expedite discovery. This factor therefore militates in favor of a stay.

### 4. Interests of Non–Parties

Next, courts consider "the interests of persons not parties to the civil litigation." Keating, 45 F.3d at 325 (citations and internal quotations omitted). The United States, a third party to the bankruptcy appeal, has an interest in an unimpeded criminal investigation that favors a stay. "Additionally, it is conceivable that discovery may touch on the Fifth Amendment rights of witnesses who are not parties to the bankruptcy appeal but who may be targets of the criminal investigation." This factor also favors a stay in this case. See Ashworth v. Albers Med., Inc., 229 F.R.D. 527, 532 (S.D.W.Va.2005).

### 5. Interest of the Public

The final factor courts must consider is "the interest of the public in the pending civil and criminal litigation." Keating, 45 F.3d at 325 (citation and quotation marks omitted). While the California public undoubtedly has an interest in the resolution of Zinnel's claims, that interest

1  pales in comparison to the public interest as a whole in unraveling the criminal counterfeit

2  scheme and punishing those responsible for that scheme.  Id.  This factor therefore favors a stay

3  as well.

4  **C. Balance of Interests**

5        Based on the above analysis, the Court finds that a stay is warranted under the particular

6  circumstances of the parallel criminal and civil proceedings against Zinnel.  This case presents

7  what has been described as one of the strongest cases for granting a stay: "where a party under

8  indictment for a serious offense is required to defend a civil or administrative action involving the

9  same matter."  Dresser, 628 F.2d at 137576.  Although the Court recognizes that Plaintiffs and the

10  public have an interest in expeditious resolution of the civil proceedings, the Court finds that

11  those interests are unlikely to be seriously prejudiced by a stay.  If the bankruptcy appeal

12  proceeds, Zinnel will be forced to choose between preserving his privilege against self-

13  incrimination, thereby subjecting himself to a one-sided discovery process and adverse inferences

14  drawn from his invocation of the Fifth Amendment, and waiving the privilege in order to mount a

15  vigorous defense in the civil case.  In addition, even if Zinnel invokes the privilege, the discovery

16  Zinnel seeks from third-party witnesses may expose the basis of his criminal defense.  Weighing

17  these interests and burdens, the Court concludes that delaying the civil case will not seriously

18  injure the public interest and would alleviate a severe burden on Zinnel's rights and ability to

19  defend himself in both proceedings.  Accordingly, the Court finds that a stay is warranted.

20  **CONCLUSION**

21        For the foregoing reasons, Zinnel's bankruptcy appeal IS HEREBY STAYED pending the

22  resolution of criminal proceedings against him.

23

24  Dated: June 4, 2013

25

26  _____

27  Troy L. Nunley
    United States District Judge

28

9